IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

EMIR JAMES PHILLIPS, )
)
Plaintiff, )
v. ) No. 25-04025-CV-C-BP
)
BOARD OF CURATORS OF LINCOLN )
UNIVERSITY, et al., )
)
Defendants. )

## ORDER GRANTING MOTION TO DISMISS

Plaintiff, acting pro se, has filed suit against the Board of Curators of Lincoln University and three individuals,[1] asserting a variety of state and federal claims. Defendants have filed a Motion to Dismiss, (Doc. 11), which the Court concludes should be **GRANTED**.

## I. BACKGROUND

In addition to the Board of Curators, Plaintiff has named as defendants (1) Dr. Stevie Lawrence, the Provost and Vice President for Academic Affairs, (2) Dr. Cornelius Brownlee, the Assistant Dean of Student Conduct and Community Standards, and (3) Dr. Deneia Thomas, the Dean of the College of Professional Studies. (Doc. 7, ¶¶ 17-18, 23(c); Doc. 7, pp. 52-53 (Exhibit 7 to the Second Amended Complaint).)[2] The Second Amended Complaint is replete with legal arguments and citations, but the Court here focuses on the factual allegations, which are relatively straightforward.

Plaintiff is an Associate Professor at Lincoln University. (Doc. 7, ¶ 15.) The faculty determined two students (referred to as "A" and "Z") engaged in academic dishonesty by

---

[1] Plaintiff also purports to sue up to 20 John Doe Defendants, but he has not identified them and nothing in the Second Amended Complaint explains who they might be, so the Court disregards them.

[2] All page numbers for documents filed with the Court are those generated by the Court's CM/ECF system.

committing plagiarism in Plaintiff's class. (Doc. 7, ¶ 20.) Plaintiff apparently gave the students a poor (or failing) grade as a result, after which a dispute arose between the students and the school. "Defendants . . . transferred the dispute to the Office of Student Conduct and Community Standards," even though that office allegedly lacks any authority over grading decisions. (Doc. 7, ¶ 22.) To the contrary, Lincoln University's "Student Handbook explicitly grants faculty the authority to assign grades in cases of academic dishonesty . . . ." (Doc. 7, ¶ 21.) While not specifically alleged, the Second Amended Complaint strongly implies Lincoln University gave the two students grades different from those Plaintiff assigned. (*See* Doc. 7, ¶¶ 23, 25; Doc. 7, pp. 34-42 (Exhibit 2 to the Second Amended Complaint).)

Plaintiff has asserted eleven claims; for reasons that will be explained, the Court focuses on the four federal claims:

    Count I    Violation of the First Amendment,

    Count II   Violation of Due Process (procedural),

    Count III  Violation of Due Process (deprivation of property), and

    Count IV  Violation of Title IV of the Higher Education Act (20 U.S.C. § 1001 *et seq*.).

Defendants present several arguments for dismissal, which Plaintiff opposes. The Court will address the arguments as necessary to resolve the matter.

## II.  DISCUSSION

Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

### A. Eleventh Amendment

The Court first addresses Defendants' argument that Plaintiff's claims are barred, in whole or in part, by the Eleventh Amendment. The Eleventh Amendment forbids suits by citizens against states. *See*, *e.g.*, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997). This prohibition extends to state agencies and other arms of the state, *e.g.*, *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006), and state universities are typically held to be arms of the state. *E.g.*, *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *Scherer v. Curators of Univ. of Missouri*, 49 Fed. App'x 658, 658-59 (8th Cir. 2002); *Treleven v. University of Minnesota*, 73 F.3d 816, 817-18 (8th Cir. 1996).[3]

However, while Lincoln University was named as a defendant in Plaintiff's initial Complaint, it is not named as a party in his Second Amended Complaint. And while Lincoln

---

[3] Missouri law provides that Lincoln University's Board of Curators has the same powers as the Board of Curators for the University of Missouri. Mo. Rev. Stat. § 175.040.

University is protected by the Eleventh Amendment, state officials, including school officials, can be sued in their official capacities for prospective injunctive relief. *E.g.*, *Monroe*, 495 F.3d at 594; *Treleven*, 73 F.3d at 819; *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State. See *Ex parte Young,* 209 U.S. 123 (1908)."). Plaintiff seeks only injunctive relief, and the relief he seeks can be provided only by virtue of the Defendants' official capacities. (*See* Doc. 7, p. 25.)

Defendants "do not allege the Individual Defendants enjoy Eleventh Amendment immunity from Plaintiff's claims, where such claims seek only injunctive relief. Instead, Defendants allege the Eleventh Amendment bars all claims against Lincoln University." (Doc. 16, p. 6.) However, Lincoln University is not a defendant. Therefore, the Eleventh Amendment has no applicability here.[4]

### B. Count I – First Amendment

Count I alleges the First Amendment protects a professor's right to assign grades. While Plaintiff cites cases discussing the concept of academic freedom in a variety of contexts, none hold the First Amendment obligates a university to assign a student the grade preferred by a professor. "[T]he assignment of the grade is subsumed under the university's freedom to determine how a course is to be taught. We therefore conclude that a public university professor does not have a First Amendment right to expression via the school's grade assignment

---

[4] Plaintiff has named the "Board of Curators" as a defendant collectively and has not named each board member separately. The parties do not clearly address whether this is sufficient to present a claim under *Ex Parte Young*, or whether this should be considered the equivalent of a claim against Lincoln University. The Court will not independently consider the issue, particularly because Plaintiff has named Dr. Lawrence, Dr. Brownlee, and Dr. Thomas as defendants in their official capacities. In this regard, while Defendants assert the defense of qualified immunity, "[q]ualified immunity does not apply to a claim for injunctive relief" and only applies in suits seeking damages from government officials in their individual capacity. *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019).

procedures." *Brown v. Armenti*, 247 F.3d 69, 75 (3d Cir. 2001); *see also Lovelace v. Southeastern Massachusetts Univ.*, 793 F.2d 419, 425-26 (1st Cir. 1986).

Plaintiff relies primarily on the Sixth Circuit's decision in *Parate v. Isibor*,[5] which held that "[b]ecause the assignment of a letter grade is symbolic communication intended to send a specific message to the student, the individual professor's communicative act is entitled to some measure of First Amendment protection." 868 F.2d 821, 827 (6th Cir. 1989). However, that protection is limited; "the individual professor may not be compelled, by university officials, to change a grade that the professor previously assigned to her student," *id*. at 828, but a professor "has no constitutional interest in the grades which his students ultimately receive." *Id*. at 829. This distinction was made clear in a subsequent Sixth Circuit decision:

> Our concern in *Parete* was not with the University's insistence that the grade be changed, but only with the insistence that Parete himself make and endorse that change. A professor's own evaluation of a student's work, and the grade that he or she decides to assign to reflect that evaluation is an important part of a professor's teaching method. The grade that is affixed to a student's transcript, however, is the concern of the university. In other words, the university may override the professor's evaluation, and change the assigned grade. It may not require him to publicly endorse those changes.

*Johnson-Kurek v. Abu-Absi*, 423 F.3d 590, 594 (6th Cir. 2005) (citations omitted).

Here, Defendants did not require Plaintiff to change the students' grades; instead, they changed the grades finally assigned to the students by Lincoln University. Even under *Parate*, then, Plaintiff has no First Amendment right to insist that Lincoln University assign a particular grade to a student. Count I must be dismissed for failure to state a claim.

---

[5] Other cases cited by Plaintiff are simply inapplicable or do not exist. For instance, several cases he cites involve the rights of students, not faculty members. *See Healy v. James*, 408 U.S. 169 (1972); *Schuler v. University of Minnesota*, 788 F.2d 510 (1986). The cases he cites involving faculty members arise from completely different situations and provide no support for Plaintiff's asserted First Amendment right to dictate the grade Lincoln University issues to students. *See Keyshian v. Board of Regents*, 385 U.S. 589 (1967); *Burhnam v. Ianni*, 119 F.3d 668 (8th Cir. 1997); *Dorsett v. Board of Trustees for State Colleges & Univs.*, 940 F.2d 121 (5th Cir. 1991). Other cases have nothing to do with an educational setting, much less the rights of educators. *See Kirkeby v. Furness*, 92

### C. Count II – Procedural Due Process

Count II alleges Defendants "improperly assum[ed] authority over a matter adjudicated through faculty governance" and cites two cases addressing procedures for disciplining students. (Doc. 7, ¶¶ 84-86 (citing *Goss v. Lopez*, 419 U.S. 565 (1975) and *Crook v. Baker*, 813 F.2d 88 (8th Cir. 1987).) Defendants argue Plaintiff lacks the property or liberty interest necessary to entitle him to procedural due process protection; Plaintiff does not address this argument, and the Court agrees with Defendants.

Cases addressing the due process rights of students being disciplined have no direct bearing here: Plaintiff is not a student, nor was he subjected to discipline of any kind. Moreover, state action implicates procedural due process only if a protected liberty or property interest is at stake, *e.g.*, *Board of Regents of Sate Colleges v. Roth*, 408 U.S. 564, 569-70 (1972); *Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000), but Plaintiff does not explain how he has a liberty or property interest in the grade Lincoln University gives to a student. As discussed in Part II(B) above, Plaintiff lacks a First Amendment interest in the grade a student receives. And as discussed in Part II(D) below, he also lacks a property interest in the grade a student receives. Therefore, he has no cognizable interest that is protectable by the Due Process Clause.

### D. Count III – Substantive Due Process

Count III alleges Plaintiff was deprived "of a property interest in his grading authority without due process." (Doc. 7, ¶ 87.) "A protected property interest exists where a plaintiff has a legitimate claim of entitlement to a benefit that is derived from a source such as state law." *Schueller v. Goddard*, 631 F.3d 460, 462-63 (8th Cir. 2011) (quotation omitted). "It is [also] well-settled that a contract with a state entity can give rise to a property right protected under the

---

F.3d 655 (8th Cir. 1996). Finally, two case Plaintiff cites—*Shields v. Gerhart*, 155 F.3d 332 (8th Cir. 1998) and *Gonzalez v. University of Minnesota*, 63 F.3d 986 (8th Cir. 1995)—do not seem to exist.

Due Process Clause." *Omni Behav. Health v. Miller*, 285 F.3d 646, 652 (8th Cir. 2002). However, neither the Second Amended Complaint nor Plaintiff's response to the Motion to Dismiss establish that a property interest exists.

The Court notes Counts VI and VIII identify state statutes that purportedly granted Plaintiff a right to determine students' grades. However, none of those statutes grant Plaintiff such an entitlement. *See* Mo. Rev. Stat. §§ 173.003, 173.1102, 610.010-.035. The Second Amended Complaint also refers to "faculty governance policies" he characterizes as creating an "implied contract with faculty." (Doc. 7, ¶ 94.) However, not every contract "gives rise to a property interest protected by the Due Process Clause," *Omni Behav. Health*, 285 F.3d at 652 (citing *Perry v. Sinderman*, 408 U.S. 593 (1972)), and Plaintiff presents no allegations or argument demonstrating the contract he describes falls into any of the categories that would give rise to due process protections. *See id*. at 652-53. Therefore, Count III fails to state a claim for which relief can be granted.

### E.  Count IV – Violation of Title IV of the Higher Education Act

Title IV of the Higher Education Act relates to student loans. The Second Amended Complaint alleges Defendants have violated the Higher Education Act but does so generally; neither it nor Plaintiff's response to the Motion to Dismiss identifies a specific statutory section implicated in this case. The Second Amended Complaint also refers to 34 C.F.R. § 668.16, (Doc. 7, ¶ 90), but that regulation does not address grading procedures. Furthermore, Defendants argued Title IV does not provide a private right of action, (Doc. 12, p. 16), and Plaintiff has not argued otherwise. Accordingly, Count IV will be dismissed.

### F. Counts V – XI – The State Law Claims

Defendants have argued (1) the Court should decline supplemental jurisdiction over Counts V through XI and, alternatively, (2) Counts V through XI fail to state a claim. The Court agrees with Defendants' first argument and Counts V through XI will be dismissed without prejudice.

The Second Amended Complaint specifically invokes the Court's authority to resolve federal questions, (Doc. 7, ¶ 13); furthermore, it does not allege there is diversity of citizenship between the parties or more than $75,000 in controversy. *See* 28 U.S.C. § 1332. Therefore, the Court has only supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a). Supplemental jurisdiction is not mandatory, and a court may decline supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction . . . ." *Id*. § 1367(c)(3). Here, the Court had original jurisdiction over Counts I – IV, but as discussed above all four of those counts are being dismissed. Accordingly, the Court declines to exercise supplemental jurisdiction over Counts V – XI.

### III. CONCLUSION

The Motion to Dismiss, (Doc. 11), is **GRANTED**. Counts I through IV are dismissed with prejudice for failure to state a claim. Counts V through XI are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
Date: May 19, 2025　　　　　　　　　　UNITED STATES DISTRICT COURT